THE STATE OF OREGON, EX REL. J. F. CAPLES, DISTRICT ATTORNEY OF THE FOURTH JUDICIAL DISTRICT OF SAID STATE, RESPONDENT, *v.* THE HIBERNIAN SAVINGS AND LOAN ASSOCIATION, APPELLANT.

CONSTITUTIONAL PROVISION CONSTRUED—BANKS MAY BE INCORPORATED.—
Section 1, article 11, of the constitution of Oregon does not prohibit the establishment or incorporation of banks, excepting only banks and moneyed institutions with the privilege of making, issuing, and putting in circulation bills, checks, certificates, promissory notes, etc., to circulate as money.

APPEAL from Multnomah County.

This is an action brought by the district attorney of the fourth judicial district to test the validity of the appellant's corporate existence under the constitution of the state. The complaint is as follows:

Now comes the above-named plaintiff, on leave heretofore, for that purpose, granted by this honorable court, and for cause of complaint against said defendant alleges: That defendant is a corporation duly incorporated under and by virtue of the general incorporation laws of the state of Oregon, on the fifteenth day of November, 1879, having its principal office and place of business in the city of Portland, in Multnomah county and state aforesaid; that said corporation was incorporated and organized for the object and purpose of receiving deposits, making loans, and carry-

ing on a banking business at Portland, Oregon.   That since the incorporation of said defendant, said defendant, in said city of Portland and state aforesaid, has received deposits, made loans, and transacted a banking business, and by so doing has exercised franchises and privileges not conferred upon it by law, and not permitted by the constitution of said state of Oregon.

Wherefore plaintiff prays judgment that the said defendant be excluded from all corporate rights and privileges and franchises, etc.

The appellant, answering, alleges that it is now receiving deposits, making loans, and exercising such rights, franchises, and privileges, as are conferred upon it by law, by virtue of its articles of incorporation, a copy of which is hereto attached, and that it has exercised no other rights, privileges, or franchises.

### ARTICLES OF INCORPORATION OF THE HIBERNIAN SAVINGS AND LOAN ASSOCIATION.

Know all men by these presents that we, whose names are hereto signed, desiring to incorporate ourselves into a private incorporation for the purposes and objects hereinafter mentioned, under the laws of the state of Oregon, and in pursuance thereof, do hereby declare, publish, and agree to the following articles of incorporation:

Article 1. The name by which this corporation shall be known is the Hibernian Savings and Loan Association.

Art. 2. The enterprise, business, and pursuits of this corporation, and in which it shall engage, is to provide a safe and profitable place of deposit where persons dealing with the corporation may deposit their money, to be retained, loaned out, invested, and returned, together with such interest as the corporation may choose or agree to pay for the use thereof, and in the manner and according to the custom of other savings and loan institutions, and to this end this corporation shall have power to make such rules, regulations, stipulations, and agreements with its depositors and persons dealing with the corporation in its corporate capacity as may be convenient or desirable, and not in conflict

with the laws of the state of Oregon. The corporation shall have full power to loan money on such security as may be approved by a board of directors, to be elected or appointed by the stockholders of the corporation, and do any and all things necessary or convenient to secure depositors such profits and increase upon their deposits as may be legitimate and proper for the corporation to pay, and in carrying out the true objects and interests of these articles of incorporation, and for the successful accomplishment of the purposes of the corporation. This corporation shall have power and authority to purchase, lease, rent, and hold such real estate as may be necessary or convenient in the transaction of its said business. The corporation shall never have the power, privilege, or authority to make, issue, or put into circulation any bill, check, certificate, promissory note, or other paper, or the paper of any bank, company, or person to circulate as money.

Art. 3. The principal office and place of business of this corporation shall be at Portland, in the county of Multnomah, and state of Oregon.

Art. 4. The amount of the capital stock of this corporation shall be one hundred thousand dollars.

Art. 5. The amount of each share of such capital stock shall be one hundred dollars.

Art. 6. The duration of this corporation shall be perpetual.

The following facts were agreed upon by the parties:

1. That defendant is a private incorporation, duly incorporated under and by virtue of the general laws of the state of Oregon, on the fifteenth day of November, 1879, having its principal office and place of business at Portland, Multnomah county, state of Oregon.

2. That "Exhibit A" of defendant's answer is a true copy of defendant's articles of incorporation.

3. That defendant is exercising no other powers, privileges, or franchises than those set out in article 2 of said articles of incorporation.

4. That defendant had elected a board of directors, and in every manner complied with the statute, in order to vest in them whatever powers they may legally exercise.

5. That defendant is now receiving deposits from persons choosing to deposit their money with defendant, and is paying interest to said depositors on said deposits, and is loaning such deposits for the benefit of said depositors and of the corporation, and has an office in said city of Portland for the transaction of said business."

*Dolph, Bronaugh, Dolph & Simon, and Stott & Gearin,* for appellant.

*J. F. Caples, District Attorney, and M. F. Mulkey,* for respondent.

By the Court, KELLY, C. J.:

The question presented for our consideration involves the construction of section 1, article 2, of the constitution, which is as follows: "The legislative assembly shall not have the power to establish or incorporate any bank, or banking company, or moneyed institution whatever; nor shall any bank, company, or institution exist in the state with the privilege of making, issuing, or putting into circulation any bill, check, certificate, promissory note, or other paper, or the paper of any bank, company, or person, to circulate as money."

It is claimed by the respondent that the first clause of this section prohibits the legislative assembly from incorporating or from authorizing the incorporation of any bank or moneyed institution whatever; and that under the second clause, all banks, companies, and institutions are forbidden to exist in the state, with the privilege of making, issuing, or putting in circulation, any bill, check, certificate, promissory note, etc., to circulate as money. In other words, it is claimed that this section of the constitution contains two distinct propositions, independent of each other. That, we hold, is not the proper construction to be placed upon it, nor was it so intended by the convention which framed the constitution. As a matter of history, it is well known that during the whole time of the territorial government, the currency consisted of gold and silver only; and that bank notes were unknown, and never circulated among the

people as money.  The precious metals were then in great abundance here, and in the adjoining state of California. They were the production of our own coast, and the great source of its wealth, and very naturally the people of Oregon preferred that kind of money which then commanded the attention of the civilized world.  They, moreover, as naturally distrusted paper money, with which they were then unacquainted, and to which they were unaccustomed. Many of the members of the constitutional convention, too, were not unfamiliar with banking operations, in the states where they lived before coming to Oregon.  They had known or heard of repeated failures of banks to redeem the notes which they had put in circulation, and the losses and consequent suffering which those failures had caused to the communities where the banks existed.  And it was to prevent a recurrence of these remembered evils that the clause in question was inserted in the constitution.  The convention did not intend to exclude banks and moneyed institutions from the state, but to prohibit them from issuing bank notes to circulate as money.  It is hardly to be supposed that the members of that body did not know that banks of deposit and discount, and banks of exchange, were necessary to properly transact business in every commercial state; or that they were ignorant of the benefits which savings banks, properly managed and conducted, are to every civilized community.  In order to arrive at a correct understanding of what the convention intended by placing that section in the constitution, we have examined its journal and proceedings, and they only tend to confirm the opinions before expressed.

As originally reported by the committee on corporations and internal improvements, the first section of article 11 reads as follows:

"Sec. 1. The general assembly shall not have the power to establish or incorporate any bank or banking company or moneyed institution whatever, with the privilege of making, issuing, or putting in circulation any bill, check, ticket, certificate, promissory note, or other paper, or the

paper of any bank, company, or person, to circulate as money."

In the debate which took place upon this section, it was supposed that as it was reported by the committee on corporations and internal improvements, the section would not prohibit corporations organized in other states from coming to Oregon and establishing branch offices and putting paper money in circulation. To prevent this, Mr. Williams offered the following amendment: Insert in sec. 1, second line, after "*whatever*," "nor shall any bank, company, or institution exist in this state," which amendment was adopted. Excepting striking out the word *general* and inserting the word *legislative*, this was the only amendment made to the committee's report. And all that was intended by the convention in adopting the amendment was to place corporations from other states under the same restrictions as those incorporated in this state. All alike were to be prohibited from making, issuing, or putting bank notes in circulation as money.

Excepting that the amendments adopted by the convention are not italicized, the engrossed copy of article 1, sec. 11, is as follows:

"Section 1. The legislative assembly shall not have the power to establish or incorporate any bank or banking company or moneyed institution whatever, *nor shall any bank, company, or institution exist in the state* with the privilege of making, issuing, or putting in circulation any bill, check, certificate, promissory note, or other paper, of any bank, company, or person to circulate as money."

The section, as engrossed, is without any punctuation whatever. We are, therefore, well satisfied that the convention did not intend to separate that part of the section which preceded the amendment from the context which followed the amendment. It follows from this that the semicolon, placed immediately after the word "*whatever*" in the printed constitution, was a clerical mistake, and that it was not entitled to have the force and effect claimed for it by the respondent.

Another thing we must take into consideration in the con-

struction of this section.  If it be construed as contended for by the respondents, then it presents this singular anomaly, that banking privileges have been extended to the citizens of other states and the subjects of foreign nations, which have been denied to our own people.  They are permitted to establish banking corporations in Oregon, having all the rights and privileges usually exercised by banks, excepting only those of making and issuing bank bills and notes to circulate as money.  If conceded to them, why should these privileges be withheld from citizens of this state ?  Such, we again say, was not the intention of the framers of the constitution.

The judgment of the court below is reversed, and judgment will be entered in favor of the appellant on the statement of facts agreed upon by the parties.